IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LVMH SWISS MANUFACTURERS, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-1201-CV-W-ODS |
| | ) | |
| MEIEROTTO'S JEWELERY, L.P. | ) | |
| d/b/a MEIEROTTO MIDWEST JEWELERS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>AMENDED ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS</u>

Pending is Defendant's Motion to Dismiss for Failure to State a Claim.  For the following reasons, the Motion (Doc. # 11) is denied.

I.  BACKGROUND

Plaintiff is a Swiss corporation that manufactures watches and distributes them in the United States through a network of authorized of authorized retailers.  Amended Complaint ("AC"), ¶¶ 5 and 10.  Defendant, a retail jewelry store in Kansas City, Missouri, was an authorized retailer until 2003.  AC, ¶¶ 15-16.  Nonetheless, Defendant continues to sell Plaintiff's watches.  AC, ¶ 17.  Plaintiff further alleges that Defendant (1) represents to customers that it is authorized retailer, (2) represents to customers that the watches are backed by Plaintiff's warranty, (3) provides customers with manufacturer's warranty cards, and (4) sells Plaintiff's watches "in packaging which has been defaced such that identifying product numbers and bar codes are obscured or altered."  AC, ¶¶ 18-19, 21.  With respect to the warranty, Plaintiff alleges it honors the warranty only if the watch is sold by an authorized retailer, and the warranties Defendant distributes are invalid because Defendant is not an authorized retailer.  AC, ¶ 20.  Plaintiff asserts four causes of action:

- Count I – False representation of quality in violation of 15 U.S.C. § 1125(a)(1)(B), premised on misrepresentations about the warranty.

- Count II – False representation of association in violation of 15 U.S.C. § 1125(a)(1), premised on false representations that Defendant is an authorized retailer.

- Count III – Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), premised on sales of watches that "materially differ" from Plaintiff's watches in that they lack a valid warranty and are "in defaced and materially altered product packaging."

- Count IV – Unfair Competition in violation of 15 U.S.C. § 1125(a)(1)(A), premised on sales of watches that "materially differ" from Plaintiff's watches in that they lack a valid warranty and are "in defaced and materially altered product packaging."

## II.  DISCUSSION

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." Stodghill v. Wellston School Dist., 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint

2

pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

The Court is limited to a review of the Amended Complaint; the only items outside the Complaint that may be considered without converting the motion to one seeking relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are (1) exhibits attached to the Complaint, and (2) materials necessarily embraced by the Complaint.  Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003).  As will be discussed more fully below, the Court concludes the written warranty offered by Plaintiff is necessarily embraced by Plaintiff's legal claims, given that the viability of those claims depends (entirely, in some instances) upon the warranty's provisions.

## A.  Count I

The Lanham Act, and specifically 15 U.S.C. § 1125(a)(1)(B), provides a private right of action against a person who "uses in commerce any word, term, name, symbol, or device, or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities."  A claim under this provision has the following elements:

1. The defendant must make a false statement of fact about its product or about another's product,

3

2.  the statement must actually deceive or have the tendency to deceive a substantial segment of the defendant's audience,

3.  "the deception is material, in that it is likely to influence the purchasing decision,"

4.  "the defendant caused the false statement to enter interstate commerce," and

5.  the plaintiff has or is likely to suffer as a result of the false statement.

American Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390 (8th Cir. 2004). Under Count I, the false statements Plaintiff alleges were made relate to the warranty's validity.  However, the Amended Complaint does not include a copy of the warranty.


*1.*


Defendant contends (1) the warranty's validity is a question of law, (2) the warranty is a document that is fairly embraced by the pleadings so it can be considered in ruling on a motion under Rule 12(b)(6), and (3) Plaintiff's failure to attach the warranty to the Amended Complaint should not preclude the Court from considering it, and (4) under the Magnuson-Moss Warranty Act ("MMWA"), Plaintiff is legally obligated to honor the warranty so Defendant's statements are true as a matter of law.

In response, Defendant first insinuates the Court should not be concerned about the warranty's actual language and should instead accept its representations about the warranty's terms.  The Court disagrees.  The Court must construe Plaintiff's factual allegations favorably, but the meaning of a written warranty is not a factual allegation. Moreover, inasmuch as Plaintiff is alleging that a false statement was made, it was incumbent upon Plaintiff to specify the circumstances of the false statement – including the true terms of the warranty that was the subject of the allegedly false statement.  Cf. Fed. R. 9(b); see also United States ex rel. Raynor v. National Rural Utilities Co-op. Finance Corp., 690 F.3d 951, 956 (8th Cir. 2012) (Rule 9(b) applies to causes of actions grounded in fraud); Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327-30 (Fed. Cir. 2009) (applying Rule 9 to Lanham Act claims).  In short, if Plaintiff wanted to

4

adequately allege Defendant misrepresented the terms of a written warranty, the First Amended Complaint needed to include a copy of the warranty.[1]

Plaintiff next contends the Court should disregard the warranty submitted by Defendant because it is not the warranty that Defendant actually distributed to consumers. Of course, the warranty that is fairly embraced by the First Amended Complaint is the warranty Defendant was actually provided to its customers. Happily, Plaintiff has provided a copy of the warranty it alleges Defendant distributed to its customers. Rule 12(b)(6) requires the Court to accept Plaintiff's allegations about which warranty was issued, so for purposes of this case the Court holds the First Amended Complaint alleges Defendant violated the Lanham Act by misrepresenting the scope and terms of Plaintiff's warranty, and the warranty is the one identified by Plaintiff in its response to Defendant's Motion to Dismiss.

<u>2.</u>

The preceding discussion leads to the following interim conclusions: Rule 12(b)(6) requires the Court to accept Plaintiff's allegations about which warranty was issued, so for purposes of this case the Court holds the First Amended Complaint alleges Defendant violated the Lanham Act by misrepresenting the scope and terms of Plaintiff's warranty, and the warranty is the one identified by Plaintiff in its response to Defendant's Motion to Dismiss. Rule 12(b)(6) limits the Court to consideration of the law, the factual allegations in the First Amended Complaint, and any material attached to or "fairly embraced" by the First Amended Complaint. The warranty terms that are the subject of the misrepresentations should have been attached to the First Amended Complaint or, barring that, are fairly embraced by it. The scope and terms of Plaintiff's warranty are questions of law and include interpretation of the MMWA.

---

[1]One might argue (as Defendant has) the First Amended Complaint should be dismissed for this reason alone. However, (1) if asked, the Court would likely allow Plaintiff an opportunity to cure the defect, and (2) as shall be discussed, Plaintiff has in substance (though not form) effectively cured the defect – at least, sufficiently for present purposes – by providing a copy of the written warranty in response to Plaintiff's motion. It would behoove Plaintiff to formally amend its Complaint.

The Court now considers Defendant's assertion that Count I should be dismissed because, as a matter of law, it has not made a false statement as required for a Lanham Act violation. Plaintiff has not fully responded to this issue, instead averring that it "reserves all right to refute Defendants' characterization of the Moss-Magnuson Act as well as to Defendants' [sic] characterization of the TAG Heuer warranty that it attached to its motion as this case moves forward." Plaintiff's Opposition at 9 n.2. Defendant has presented arguments premised on the MMWA *now,* so the time for Plaintiff to make arguments about the MMWA is *now.*

Plaintiff's abdication of the opportunity to discuss the MMWA's application to the warranty does not mean Defendant automatically prevails, as it is the Court's responsibility to ascertain the law. The Court has examined the authorities Defendant has cited (as well as the results of its own independent research) and rejects Defendant's legal conclusions.

The warranty at issue describes itself as a "Limited Warranty for TAG Heuer Watches Purchased in the U.S.A." Defendant contends that there are only two types of warranties permitted under the MMWA – a full warranty and a limited warranty. Defendant further argues that the addition of any words other than "limited warranty" nullifies the designation of a limited warranty, and lacking a proper designation as a limited warranty, it must be construed as a full warranty. While it is true that a warranty is either full or limited, e.g., 15 U.S.C. § 2303(a), the Court does not agree that the use of additional language automatically nullifies Plaintiff's designation of a limited warranty.

Defendant's conclusion is supported primarily by the Federal Trade Commission's decision in *In the Matter of George's Radio and Television Company, Inc.*, a decision issued in 1979 and reported at 94 F.T.C. 1135. In that matter, the FTC considered a warranty that was denominated as "George's extended limited warranty." Analysis of that decision demonstrates the FTC's concern about this label was not with the use of the word "George's," but rather with the word "extended," as the retailer was arguing the warranty offered was merely an extension of the manufacturer's already-

6

existing warranty.[2]  The Commission held, however, that such a warranty is not contemplated by the MMWA, so the designation was invalid.

Defendant's other authorities are even further from the mark, and actually support the Court's conclusion that it is only a vague or confusing designation that must be automatically construed as a full warranty.  In *FTC v. Virginia Homes Manufacturing Corporation*, the District of Maryland dealt with a warranty that was described as "Manufacturer's Warranty and Limitation of Remedy."  The court held that this title did not indicate it was a limited warranty.  509 F. Supp. 51, 57 (D. Md. 1981).  In *Hughes v. Segal Enterprises, Incorporated*, the Western District of Arkansas held that a warranty must be designated as "full" or "limited," but did not say that the addition of other words voided the "limited" designation.  Instead, the court observed (as indicated herein) that the inquiry is whether "the warranty was clearly understood by the plaintiffs to be a limited warranty" and that only if there was confusion or vagueness would the warranty be designated as a full warranty.  627 F. Supp. 1231, 1239 (W.D. Ark. 1986).[3]

Defendant cites no other legal authority for the remarkably harsh proposition that the insertion of *any* word with the phrase "limited warranty" automatically, and as a matter of law, deprives the warranty of its limited status and transforms it into a full warranty.  If the proposition were true the Court would expect there to be additional authority somewhere – but Defendant's failure to cite (and the Court's inability to find) such authority makes the Court doubt the proposition.  The Court cannot hold as a matter of law that the phrase "Limited Warranty for TAG Heuer Watches Purchased in the U.S.A." is confusing, so for purposes of Defendant's motion the Court must treat the warranty as a full warranty.

Defendant's rationale for dismissing Count I rests entirely on its predicate assertion that the warranty cannot be limited.  Defendant also contends that even if the warranty is limited it would still apply to Defendant's customers, but this argument

---

[2]For instance, in finding 16, the Commission noted that the retailer had allegedly attached different interpretations at different times to its use of the word "extended."

[3]In *Hughes*, the warranty failed to describe itself as limited yet contained a limitation.  The failure to designate itself as a "limited warranty" led the court to conclude it was a full warranty.  627 F. Supp. at 1238-39.

misapprehends Plaintiff's theory.  Count I seems to focus on the warranty's requirement that if warranted repairs are sought, the customer must return the watch "accompanied by the warranty service card (located in the inside front cover of the warranty booklet) accompanying the watch at the time of purchase duly completed by the retailer whose name is printed thereon as the retailer vendor of record and by proof the date and location of the purchase."  While this requirement may not be imposed for a full warranty, see 16 C.F.R. § 700.7, the Court is presented with no authority demonstrating the requirement cannot be imposed under a limited warranty.  Defendant insists the warranty requires the warranty service card be completed by "the retailer whose name is printed thereon" and not an "authorized dealer," but the present procedural posture does not permit the Court to conclude that those are different things.  The Court cannot presently hold as a matter of law that Plaintiff is legally obligated to honor the warranty on watches sold by Defendant, so Defendant's request to dismiss Count I must be denied.

### B.  Count II

As stated, Count II is premised on Defendant's alleged statements to customers that it is an authorized dealer of Plaintiff's watches.  Defendant does not dispute that the claim is viable, but nonetheless contends it should be dismissed because Plaintiff has not plead any damages from this violation, and that no damages can occur because the watches are genuine.

The Court will start with the second argument first.  While it is true that the watches were actually made by Plaintiff, this fact does not provide Defendant with the license to lie to customers and falsely assert that it is an authorized dealer.  Indeed, one of the cases Defendant relies upon took pains to point out that the defendant had disclaimed any relationship with the plaintiff, and that the defendant's customers were therefore not operating under the mistaken impression that the defendant was an authorized distributor.  Graham Webb Inter'l Ltd. P'ship v. Emporium Drug Mart, Inc., 916 F. Supp. 909, 917 (E.D. Ark. 1995).  Even if "trademark law does not prevent the sale of genuine goods bearing a true mark even if the sale is not authorized by the mark

8

owner," <u>Minnesota Mining & Mfg. Co. v. Rauh Rubber Inc.</u>, 943 F. Supp. 1117, 1128 (D. Minn. 1996), none of the cases Defendant has cited stand for the proposition that a seller of genuine goods can affirmatively misrepresent themselves to be an authorized dealer.[4]

With respect to damages, Plaintiff has alleged that "by falsely representing itself as being legitimately authorized by" Plaintiff, Defendant is placing Plaintiff's reputation beyond Plaintiff's control. AC, ¶ 34. As a result, Defendant benefits from Plaintiff's goodwill, AC, ¶ 36, and Defendant's goodwill is damaged. AC, ¶ 37. Defendant argues these allegations are insufficient because Plaintiff has not alleged Defendant has done anything to damage that goodwill – but Plaintiff does not cite to any law that requires such an allegation. Moreover, while there may be some overlap with Count I, the fact that consumers may call upon Plaintiff and demand that warranties be honored under conditions when Plaintiff would not honor them could constitute damage. <u>Cf</u>. <u>T-Mobile USA, Inc. v. Terry</u>, 862 F. Supp.2d 1121, 1129-30 (W.D. Wash. 2012) (customers called Plaintiff demanding service on products sold by retailer who alleged it was an authorized dealer); <u>Adolph Coors Co. v. A. Genderson & Sons, Inc.</u>, 486 F. Supp. 131, 136 (D. Colo. 1980) (as described by Defendant on page 10 of its Suggestions in Support, a case in which a trademark owner was allowed to "sue an unauthorized distributor who had not properly refrigerated plaintiff's beer before selling it with decreased quality to the public, where 'customers are likely to be confused and will hold [plaintiff]' responsible for any loss of high quality resulting from defendant's acts). Indeed, the Eighth Circuit has decreed that a valid Lanham Act claim can be proved if the plaintiff suffers either a diversion of sales or a loss of goodwill associated with its products. <u>E.g.</u>, <u>Buetow v. A.L.S. Enterprises, Inc.</u>, 650 F.3d 1178, 1182 (8th Cir. 2011). While the Amended Complaint could include greater clarity and detail, the Court holds sufficient clarity and detail exists.

---

[4]The Court takes this opportunity to reject Defendant's argument that the district court decisions in <u>Graham Webb</u> and <u>Rauh Rubber</u> are binding in this case. Defendant's Reply Suggestions at 5. With all due respect to those judges, decisions from the Western District of Arkansas and the District of Minnesota are not binding on this Court. This does not mean the undersigned does not agree with those decisions, but it does mean that this Court need not automatically follow them.

C.  Count III

Defendant argues that Count III must be dismissed pursuant to the "genuine goods" doctrine referenced earlier with respect to Count II.  Defendant further argues that Plaintiff's allegation that the watches are sold in defaced or altered packaging will not save the claim.  The Court disagrees: there is no absolute rule establishing that a claim cannot be predicated on alterations to the packaging, product code, UPC symbols, or the like.  Put another way, there is no case holding that a good sold with such defacing automatically remains a "genuine good."  The hallmark of an infringement claim under section 1114 is the likelihood of consumer confusion, e.g., Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997), and generally the sale of genuine goods bearing a true mark will not infringe because genuine goods – generally – cannot confuse the consumer.  However, the fact that the goods are otherwise genuine does not preclude the action when the altered packaging or codes interferes with the manufacturer's ability to control the product's quality.  E.g., Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 243 (2d Cir. 2009); Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1303 (11th Cir. 2001).[5]

Defendant also argues the Lanham Act cannot be interpreted to apply to alterations to product codes and packaging because Congress has considered and rejected laws explicitly addressing such conduct.  The Second Circuit's rejection of this very argument is persuasive: "'Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.'  The fact that proponents of a particular view sought unsuccessfully to have a statute amended to state a proposition with unmistakable clarity tells nothing about whether the

_____

[5]Even the unpublished Federal Circuit opinion offered by Defendant acknowledges this point while discussing the content of Eighth Circuit law.  Brand Management, Inc. v. Menard, Inc., 1998 WL 15241 (Fed. Cir. 1998) ("Brand and Pro Shop assert that the goods sold by Menard cannot be considered genuine because, through Menard's actions, they lost the right to control the quality of the product.  It is true that a product is not truly genuine unless it is manufactured and distributed under the same quality control standards established by the trademark owner.")

10

preexisting law already covered the point, albeit less clearly." <u>Zino Davidoff</u>, 571 F.3d at 243 (quoting <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 187 (1994)).

In short, sometimes altered packaging and codes makes the product different. Whether this is true in the present case is a question of fact that cannot be considered in the context of a Rule 12(b)(6) motion. In this regard, the Court notes the district court cases upon which Defendant principally relies were decided after some development of the record: <u>Rauh Rubber</u> involved a request for a preliminary injunction, and <u>Graham Webb</u> was decided on summary judgment. There has been (and given the procedural posture cannot be) any development of this Record. Count III states a legally viable cause of action; whether Plaintiff can prove it is a matter for another day.

## D. Count IV

Defendant's arguments regarding Count IV are really the same as those advanced with respect to the other Counts, particularly Counts I and III. For the reasons previously expressed, the Court rejects those arguments in the context of Count IV as well.

## III. CONCLUSION

Defendant's Motion to Dismiss for Failure to State a Claim is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 16, 2013          UNITED STATES DISTRICT COURT

11